## Owens v. Commonwealth.

(Decided February 21, 1928.)

### Appeal from Perry Circuit Court.

1. Homicide.—Evidence held sufficient to sustain conviction of murder as against claim of self-defense.
2. Homicide.—Newly discovered evidence as to deceased's acts and statements before murder illustrating condition of minds of de- fendant and deceased, and indicating which of them would likely be aggressor, held to require new trial, where defendant claimed that he shot deceased in self-defense.

MRS. ADAM OWENS, wife of Adam Owens, for appellant.

J. W. CAMMACK, Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Re- versing.

Adam Owens was tried and convicted for the murder of Willis Combs, and sentenced to the penitentiary for life. The instructions given by the trial court were as favorable to the appellant as he could have asked, and the evidence as hereinafter detailed was sufficient to sustain the verdict. It is suggested that the court erred in the introduction of evidence, but there is no merit in this contention, and the only real ground of complaint is the failure of the court to grant a new trial on the ground

of newly discovered evidence.  This necessitates a statement of the facts.

It appears that Adam Owens and Paddy Combs lived on opposite sides of a hollow, their residences being about 200 yards apart.  On the 29th of June, 1927, the deceased, Willis Combs, and another brother, Lew Combs, started to the home of Paddy, but on their way stopped at the home of Owens, arriving there shortly after 12 o'clock.  Owens was not at home, but returned shortly thereafter, and the Combs boys remained.  Lew Combs had a shotgun, which upon their arrival he carried into the house and laid down.  The two had some home brew, which was consumed, and later one of them went out and procured some more.  Still later in the afternoon Henry Napier passed on horseback, and Willis Combs rode off behind him, and returned with a fruit jar of moonshine liquor, of which they partook; Willis becoming very much intoxicated.  Mrs. Owens prepared supper for them, which they ate.  Later Willis went into the kitchen, and began pouring the liquor out of the jar into the dishes, and Owens remonstrated. Combs cursed him, and carried the liquor out on the porch.  He then wanted to smoke, and insisted on ransacking Owens' premises for matches. Owens objected to this, and Combs cursed him, went to a nearby store, procured some matches, and returned.  Owens fastened his kitchen door, and asked them to leave.  Lew laughed at this, and Willis went around the house to the back porch, and broke a number of glass jars containing fruit, and went back through the house, and started over to his brother Paddy's.

In the meantime, Mrs. Owens had gone to a neighbor's on an errand, and, while returning was joined by Miss Laura Napier, and Mrs. Owens' 11 year old daughter; the three going by the house up the creek.  Owens got his gun, left the house, and followed them.  Willis went down to the bottom about half way between the two houses; Lew still remaining at Owens' house.  As to what then occurred is in dispute.  Paddy Combs and his wife testify: That they heard the breaking of glass, and looked down and saw Willis sitting in the bottom.  That they went to him.  That he was very drunk, and Mrs. Combs put her arm around his neck and asked him to go home with her, which he agreed to do.  About this time some one hallooed, and they looked around and discovered Adam Owens, who said, "You G—— d—— son

of a b———, I came back to kill you, and I am going to do it." That Paddy said, "Adam, don't come back here and kill him, we are taking him off"; and he said, "I am going to kill the G—— d—— black son of a b———." Willis turned around, and went back towards Owens. That Paddy took hold of him, and said to Adam, "Don't come back down here and kill him, Adam, I won't let him hurt you," and that Adam threw his gun up, and said, "Turn him loose, or I will kill you both." That Paddy threw his hand up and said, "Don't kill him," and about that time the gun fired, shooting him in the face, from which he died instantly. Willis had nothing in his hands at the time. On cross-examination these witnesses admitted that deceased had gone back 15 or 20 steps beyond Adam's house at the time he was shot. They further admit that, just after Owens shot, Lew Combs ran by them and fired his gun at Adams, reloaded it, and ran five or ten steps and fired again. Neither of these shots took effect, and, after the second shot, Paddy disarmed Lew. He does not know where Lew came from. Lew Combs practically admits the occurrences during the afternoon as above detailed, but says that at the time the jars of fruit were destroyed he told his brother to pay for them and get away; that his brother started off, and Adam came through the house, picked up the shotgun, and went out back of the house, cursing his brother, who was then leaving, and told him that he was going to kill him; that he went back into the house after his gun, and, after he found it, went out, and discovered his brother had been shot, and that he then fired two shots at Adam without effect.

On the other hand, Adam testifies that he and his wife were abandoning the premises; that he ran 15 or 20 steps up the road, placed the ladies and child in front of him, and told them he had run his last step; that Lew and Willis were approaching, Willis in front with two rocks, and Lew with a shotgun; that Willis was calling him a G—— d—— black son of a b———, and telling him to drop the gun and run, or he would kill him; that he called to Lew and told him to go away, that he did not want any trouble with him; that Lew fired at him, and that he shot and ran, and Lew fired a second shot as he ran—his testimony in this respect being corroborated by Miss Napier and by his little girl.

As we have said, this constituted sufficient evidence to sustain the jury's verdict. However, on the motion

for a new trial on the ground of newly discovered evidence, the defendant filed his own affidavit, supported by that of Henry Napier, to the effect that on the afternoon of the tragedy Willis Combs, while riding behind Henry Napier, told Napier that he was going down the road to get some more whisky; that he was going to kill Adam Owens, or get rid of him that night; that he was getting $50 to get rid of him; that he was not quite drunk enough to do it, and was going to get some more whisky and go back. Also that of Harve Hensley to the effect that he saw Willis Combs riding down the road behind Henry Napier that afternoon; that at the time he was orderly, and not very drunk; that about 30 minutes later he came back up the road going in the direction of Adam Owens', singing, cursing, and blackguarding, pulling slats from the fence, and hitting the ground with them, and saying, "He was the worst man who ever saw Grape Vine creek," and that he heard the shooting about 30 minutes later—it further appearing that appellant had been incarcerated and did not learn of these facts until after his trial.

In view of the conflicting evidence as to what took place at the time of the homicide, and of the fact that appellants' plea is self-defence, it will at once be observed that the evidence of Napier and Hensley was both material and relevant as illustrating the condition of mind of the parties, and as indicating which of the two would likely be the aggressor in the difficulty, and, in view of all the facts above detailed, it might have had a decisive influence upon the verdict of the jury, and on the whole case we think it was prejudicial to the substantial rights of the appellant to deny him the benefit of it.

Wherefore the judgment is reversed, and cause remanded for proceedings consistent with this opinion.